## *Kay vs. Fowler &c.*

Error to the Fayette Circuit; JESSE BLEDSOE, Judge.

*Usury. Answers. Statutes. Practice. Commissioners in Chancery.*

CHANCERY.

Case 124.

Judge MILLS delivered the opinion of the court.

KAY, the plaintiff in error, placed in the hands of Benjamin Stout divers sums of money to be loaned by him as a broker; and among others, John Fowler became a borrower at different times, at the rate of two per cent per month and the half of one per cent during the same period as commission to the broker, making, generally, the rate of thirty per centum per annum. Fowler at each time of his borrowing, gave a note including usury at the foregoing rate, till the note arrived at maturity, and then renewing it, and compounding the usury at each time. Kay at last took charge of the matter himself, instead of his broker, and, after that, Fowler seems to have been relieved from the one half of one per cent per month, the broker's commission. The notes were consolidated ultimately,

October 21.

History of the usurious transactions.

KAY
vs.
FOWLER &c.

and also swelled by additional loans, and after renewed, compounding legal interest in the notes, and including the usury in a separate note. The last of these renewals was after the passage of the act of assembly which allows a usurer to recover his debt and interest, and to forfeit nothing except the usury, and makes all usurious contracts valid except as to the usury.

Mortgage by
Fowler.

To secure this, with other debts, Fowler executed a deed of trust to Thomas Bodley, Cornelius Coyle and Thomas Fletcher, for sundry tracts of land and slaves.

Kay's bill to
foreclose.

Kay filed this bill against Fowler and his trustees, to subject the trust estate to the demand.

Fowler's answer, and interrogatories to Kay.

The answer of Fowler and the trustees set up the usury as a defence, and also sundry payments made by Fowler, and inserts interrogatories in their answer, to which Kay responds.

Question as to the sums advanced and repaid.

The great difficulty which occurred in the cause was to ascertain by accurate calculation, the amount of debt and legal interest really due, cleansing the transactions from usury, and applying the payments at a proper period. For it does appear that from the exhibits, the neat amount loaned, and time when loaned, may be ascertained, as well as the dates of payment and sums paid.

Kay's answer held evasive, and not amounting to denials.

In this process, however, the answer of the defendants in nature of a cross bill, the exhibits and depositions must be relied on. The answer of Kay to the cross bill affords but little aid. For in the accustomed mode of usurers, he is certain that the debt claimed is due, though he remembers to forget for what it is due, or what it is composed of, whether of money actually loaned alone, or of that and promises of large sums for forbearance. Prospectively he sees the way of recovery very clear before him, but he cannot retrospectively look back, and detail the variations and changes, and increase and diminution of the debt. There is darkness and forgetfulness on his side, so that his answer can be said to be a denial of almost nothing.

To aid in this process, a commissioner was appointed and reported. His report was recommitted, and he reported again. This report was disregarded, and another commissioner was appointed, who reported, and by his calculation shewed the debt to be all discharged, and a balance due to Fowler. He made also at the request of counsel, two other reports and calculations, by which he brought Fowler in debt considerable sums, at each time.

<div style="float:right">KAY<br>vs.<br>FOWLER &c.</div>

<div style="float:right">Commission-<br>ers' reports.</div>

The court below ultimately adopted the first of these three reports made by the last commissioner, and decreed a balance to Fowler; to reverse which Kay has prosecuted this writ of error.

<div style="float:right">Decree of the<br>circuit court.</div>

Much of the difficulty has accrued by a failure of the chancellor to do his duty in the court below. He has adopted a course on which we have frequently had occasion to animadvert in other cases, but which we seem not very successfully to correct. He did not look into the cause and settle its principles, first, as a guide to the commissioner, leaving to the commissioner the details of calculation according to the directions of the decree which would operate as his guide. Instead of this, he has sent the cause each time to the commissioner, without any directions, leaving the commissioner to operate upon, and guide the court, and to make a number of experiments, until one should satisfy the chancellor. The commissioner was thus to settle principles, and make the calculations in his own way first, and thus relieve the court from the burden of looking into the cause, and become substantially the investigator of the equity of the parties, subject to the *veto* of the chancellor, or by different experiments leaving the the chancellor, the election, of which he pleased.

<div style="float:right">Before refer-<br>ring a cause<br>to a commis-<br>sioner, the<br>court ought<br>to settle the<br>principles on<br>which he is<br>to make up<br>the account.</div>

From this mode of operation, it has turned out that not one of the reports in the cause, conforms to the equity and law of the case, although one of them is chosen as the basis of the decree rendered.

This imposes upon us the necessity of bringing back the cause to the point at which it stood before it was referred to a commissioner at all, and of settling the necessary principles which shall operate as

<div style="float:right">Practice in<br>this court.</div>

KAY
vs.
FOWLER &c.

Where the usurer has renewed his securities, after the passage of the act for his benefit, of Feb. 1819, he is entitled to recover principal and legal interest, and loses but the excessive interest.

Mode of calculation, and of ascertaining the sum due on an usurious transaction, of numerous advances, payments, renewals and compoundings.

Mandate.

a guide to the commissioner which may be hereafter appointed.

Much usury was due before the passage of the act relieving from a forfeiture of the whole debt and legal interest, but as both the note and mortgage is posterior in date to the act, and this according to the adjudications of this court, gives Kay the right of recovering his debt and legal simple interest thereon from the date of the several loans, till he is paid.

It will be necessary that the simple amount loaned at each time, shall be ascertained, and this ought to be the amount of each note, excluding therefrom interest legal or illegal. On this sum so loaned, simple interest is to be calculated, disregarding all renewals, or consolidation, till the time the calculation is made, and then applying the payments when made, first, to the interest due, and then the balance to the principal, and the sum thus found due, from either party, ought to be the amount of the decree, and if for Kay ought to reach the mortgaged estate. It will be found on examining each of the reports, not one pursues this simple process. Some compound the legal interest, and one at least sinks the principal by usury not paid. According to this mode, all payments for usury or interest, must be credited, as payments when made.

The decree of the court below, must therefore be reversed, with costs, and cause remanded, with direction, that such proceeding shall be had, as shall conform to this opinion, and the rules and usages of a court of equity.

*Haggin and Combs* for plaintiff; *Chinn, Cowan and Crittenden* for defendants.